IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No.  05-cv-00858-RPM

JONATHAN CROWE,

                    Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
STATE FARM LIFE INSURANCE COMPANY,
STATE FARM FIRE AND CASUALTY COMPANY, and
STATE FARM GENERAL INSURANCE COMPANY,

                    Defendants.
_____

ORDER FOR JUDGMENT OF DISMISSAL
_____

Jonathan Crowe, a former agent of the defendants, collectively identified as

State Farm, brought this civil action for libel based on the republication of false and

defamatory statements contained in an anonymous letter received by Daniel

Thompson, a State Farm vice president supervising all State Farm agents in Colorado,

at his office in Greeley, Colorado.  After investigation of the allegations made in the

anonymous letter, State Farm terminated Crowe's agency agreement and in this case

the plaintiff seeks the consequential loss of income as special damages.  The

defendants moved for summary judgment of dismissal based on the defenses of

incremental harm, consent and qualified privilege.  The plaintiff moved for partial

summary judgment of liability.  Discovery has been completed and there is evidentiary

support for the following statement of facts viewed in the light most favorable to the

plaintiff.

Crowe began his work with State Farm as a systems analyst at corporate headquarters in Bloomington, Illinois.  He applied to become a State Farm agent in the fall of 2000 and was hired as an intern in August, 2001.   Effective December 1, 2001, Crowe was employed as a "trainee agent" for offices in Silverthorne and Kremmling, Colorado.  As a trainee agent, he remained an employee of State Farm, but hired his own employees.  State Farm reimbursed trainee agents for their payments to employees for regular and overtime hours worked.  State Farm did not reimburse trainee agents for payments to their employees for sick leave, vacation, holidays or bonuses.  Accordingly, trainee agents were responsible for reporting the hours worked by their employees to support requests for reimbursement.  Crowe was appointed an independent contractor agent, effective December 1, 2003, and his agency agreement required him to operate as an independent agent, paying his own expenses and agreeing to follow all State Farm procedures and processes.

While operating as a trainee agent, Crowe employed Rachel Killinen, Elaine Jenson, Michelle Heck, Eva Gilmer, Natalie Rogers, Rosa Cubero, Jon Struhs, and his wife Anneke Crowe.  Crowe improperly submitted, for reimbursement from State Farm, false reports of overtime and regular time for Killinen, Jenson, and Heck and used State Farm funds to pay them for vacation time, sick time, bonuses, and/or for life insurance premiums on State Farm policies purchased for their families.

The first three allegations in the anonymous letter were the payment of bonuses, vacation and sick time.  The fourth and fifth allegations refer to the use of overtime to pay for life insurance policies and promotions.  These allegations turned out to be true.

2

The remaining allegations can reasonably be construed as accusations of forgery, sexual harassment and racial discrimination and are assumed to be false and defamatory.

After receiving the letter, Thompson gave a copy to Cathy Trent, State Farm's agency field executive, the supervisor for Crowe's agency.  Because the allegations involved conduct while Crowe was a trainee agent (and therefore a State Farm employee), Thompson contacted Eddie Toro, the State Farm human resources manager in Greeley, and showed him the letter.  Because Crowe was then an independent contractor agent, Thompson also contacted Blair Hall, the liaison between the Agency Executive Office and vice presidents of agency.

Pursuant to State Farm's policy and practice to investigate allegations of serious wrongdoing by a State Farm trainee agent or independent contractor through the audit department, Thompson contacted Mike Mench, a retired FBI agent and State Farm regional auditing consultant, to investigate the allegations.

Mench, assisted by Trent, conducted telephone interviews of the following individuals and disclosed the contents of the letter to:

1.      Michelle Heck, a former Crowe employee who was the service/office representative in the Silverthorne office.

2.      Eva Gilmer, a former Crowe employee.

3.      Natalie Rogers, a former Crowe employee.

4.      Marty Dirst, Crowe's former agency field consultant who worked under Trent.

3

Mench interviewed the following individuals in person, in the presence of Trent, and showed them (but did not give them) a copy of the letter:

1.    Rachel Killinen, a former Crowe employee and at that time an employee of another State Farm independent contractor agent, George Osborne.

2.    Elaine Jenson, then a current Crowe employee who worked for him in the Kremmling office.

3.    Crowe.  Crowe asked for a copy of the letter during his interview but was not given one until August, after Thompson consulted with and provided a copy of the letter to Blair Hall, Thompson's agency liaison in the Agency Executive Office at corporate headquarters.

After his interview with Mench, by email dated April 9, 2004, Crowe wrote Thompson apologizing for the "business practices I surcame [sic] to" due to "[f]inancial pressures and the need to build and retain a loyal team."

Mench asked Marian Hooks, Greeley Life Operations Assistant Manager, to review applications to verify the signatures of customers.  She did not uncover any items of concern.

Mench contacted Anita Ginther, the Finance Specialist in the Greeley Operations Center Accounting Department, regarding the payroll issues.

Mench wrote two reports of investigation to Thompson dated March 25, 2004, and April 27, 2004.  A copy of the anonymous letter was attached to the second report. Both reports were copied to Mench's supervisor and audit manager, Rex Sligar.

By Memorandum dated May 5, 2004 to Thomas Scaglione, Agency Vice

4

President for the Great Western Zone and Thompson's superior, Thompson recommended that Crowe's agency be terminated "based on Crowe's dishonest and improper reporting of overtime to pay for vacation, bonuses and Life Insurance premiums for his employees."

In early June 2004, Thompson offered Crowe an opportunity to resign but Crowe declined.  A pre-termination review meeting was then held at the Agency Executive Office.  Participants included Thompson (by teleconference), Scaglione (by teleconference), Chuck Wright, then Vice Chairman and Chief Agency Officer; Mike Davidson, Vice Chairman and Chief Agency Marketing Officer; Greg Fisher, Agency Vice President in the Agency Executive Office, Scaglione's direct superior, and the executive responsible for all of State Farm's independent contractor agents around the world; Dan Willard, in-house counsel; William Roundtree, Chief Compliance Officer, Corporate Compliance Department; and Blair Hall.  Also present were executive assistants attending as observers because they were being developed as potential field managers who may have to deal with such situations.

At a minimum, the allegations in (and thus the contents of) the letter were apparently discussed during the review meeting, although it is unclear exactly what was discussed, and it is not clear who among the participants had copies of the letter or the Mench reports.

Crowe received official notification of the termination of his Agent's Agreement, effective midnight on August 31, 2004, by letter dated July 30, 2004, from Scaglione. Crowe requested a termination review hearing, as allowed for in his State Farm Agent's

Agreement.  That hearing was held on August 18, 2004.

Crowe selected Ken Callison and John Pifer, both Colorado State Farm agents, from a list provided by State Farm, to serve on the hearing committee.  That committee also consisted of Dave Gonzales, as chair, and Jim McCambridge, an Executive Consultant from Colorado State University, Fort Collins, selected by State Farm.  All of the committee members received a copy of the letter in their packet of background materials for purposes of the hearing, which materials were then collected from the members after the hearing.  Also present were in-house counsel Anna Paxton (who also received the packet of background materials), Vice President of Operations Javier Rey, who took notes for the committee, Danny Thompson who presented the information upon which State Farm's decision to terminate Crowe's agreement was based, and Anneke Crowe, the plaintiff's wife.

Gonzales read prepared opening remarks including the following:  "In requesting this Review, Jonathan consents to a full disclosure to this Committee of all the information that has or may have a bearing on the termination of his Agent's Agreement.  Jonathan is here today and, with his consent, we will proceed."  Gonzales also stated that all information was to be treated as confidential.  Gonzales' statement was confirmed by the other members of the committee.

Crowe read a prepared statement which admitted that he made mistakes, offered his apology, admitted a few of the allegations are true, that he compensated bonuses through overtime, that he compensated sick and vacation time and reported it as regular work days after a memo came out clarifying sick time, vacation time, and

6

bonuses were not reimbursable expenses, that he did pay for an employee's life insurance policies through bonus overtime, that he did not keep adequate records for the amount of time his wife worked, that the remaining allegations are untrue, that he was working on a new Agency Staff Handbook outlining office procedures including vacation time, sick time, and bonuses, and that he had retained a CPA to go over his current accounting practices.

Thompson also made a prepared presentation saying the issue was one of trust, that "Crowe's admissions to fraudulent reporting of employee's regular hours and overtime are grounds for termination," and that they (State Farm) were troubled by Crowe's unwillingness to accept full responsibility for his actions.

After the hearing, the committee made written Findings of Fact that, while a trainee agent, Crowe engaged in unethical conduct by paying bonuses, vacation, and sick leave for his employees through overstatement of regular and overtime hours, which were then reimbursed by State Farm, and demonstrated conduct which was unbecoming of a State Farm agent.  The committee members agreed with the recommendation to terminate the relationship between Crowe and State Farm.

The findings and recommendation of the committee, along with a copy of the proceedings before the committee, including Mench's April 27, 2004 report containing the letter, were forwarded to State Farm's Chairman and CEO Edward B. Rust, Jr.   By letter dated August 26, 2004, Rust advised Crowe that he concurred with the decision to terminate Crowe's Agent's Agreement.

Because Crowe was a registered representative for State Farm's securities, a

copy of the April 27, 2004 report by Michael Mench, with the letter attached, was

provided to Amy Hanson, Ruben Arjona, and perhaps two or three more employees in

State Farm's Marketplace Compliance Department, for use in preparing a Form U-5

Uniform Termination Notice for Securities Industry Registration, deregistering Crowe

from State Farm, to be submitted to the NASD.

In the Form U-5, dated September 24, 2004 and signed by Laurie Hockenberry

as State Farm's Compliance Manager, State Farm, said among other things:

1)     in answering the question of whether "[c]urrently is, or at termination was,
       the individual [Crowe] under internal review for fraud or wrongful taking of
       property, or violating *investment-related* statutes, regulations, rules or
       industry standards of conduct?," filled in the circle "yes" (emphasis in
       original); and

2)     "As a result of an anonymous letter received alleging unethical business
       practices, an internal review was conducted.  Findings include that
       expense reimbursement requests were not included within company rules
       for reimbursement of expenses."

By letter dated September 27, 2004, Martha Wiseman from the Denver Office of

the NASD asked for documentation, including State Farm's investigation, any

determinations, and a copy of the anonymous complaint.  By letter dated October 11,

2004, Hockenberry responded to Wiseman and forwarded to her, along with other

documents, a copy of Mench's March 25, 2004 report and April 27, 2004 report with the

letter.  David L. Lapham from the NASD responded by letter dated February 1, 2005,

stating the NASD has closed its file on the Crowe matter.

An employer has a qualified or conditional privilege to publish false and

defamatory statements in the investigation of an employee's wrongdoing to those with a

8

common interest in the matter.  Those persons with supervisory authority have such an interest.  *Dominguez v. Babcock*, 727 P.2d 362 (Colo. 1986).  The scope of the privilege is disputed in this case.  Crowe argues that it is limited to those who had the actual authority to terminate the agency agreement for cause.  That contention fails to recognize the bureaucratic complexity of State Farm and the procedures required to terminate an agency.  Colorado courts have adopted the views in the Restatement (Second) of Torts § 596 that protects publication in the course of bona fide inquiries of those who are reasonably believed to have information relevant to allegations of misconduct.

There is nothing in the record to suggest that the supervisors or Mench had prior knowledge there were false allegations in the anonymous letter.  They did not know that Crowe's former employees Michelle Heck and Rachel Killinen were the authors.  There is, therefore, no basis for a finding of malice in any of the publications made.

The only publication to other than State Farm personnel was to the NASD in response to a specific request for information during that organization's investigation.  The copy of the letter was attached to Mench's investigatory reports which put the allegations in perspective.  The Form U-5 statements were mandatory under NASD rules and are privileged, even though they are distributed to others in the securities industry.  *Rosenberg v. Metlife, Inc.*, 866 N.E.2d 439 (N.Y. 2007).  The letter was not attached to the Form U-5 and there is no indication that it was seen by anyone other than the investigator who requested it.

State Farm also asserts the doctrine of incremental harm under which the

publication of defamatory statements is not actionable if the resulting harm is not different from the effects of the rest of the publication.  *Tonnessen v. Denver Pub. Co.,* 5 P.3d 959, 965 (Colo.App. 2000).  Here the damages Crowe seeks result from the termination of his agency agreement which was fully justified by those allegations which he admitted to be true.

The plaintiff is unable to support his claim that the termination was caused by anything defamatory in the anonymous letter.

State Farm has also raised consent as a defense, arguing that Crowe was aware of the procedures used in the investigation of complaints of misconduct by agents. Crowe disputes such awareness and observes that he did not know of the letter until April, 2004, after the investigation had begun and publications made.  The implied consent defense fails except as to the review by the termination review committee which Crowe requested.  Having made no objection to the presence of those attending, Crowe did consent to publication to them.

Upon the foregoing, it is

ORDERED, that the plaintiff's motion for partial summary judgment is denied and the defendants' motion for summary judgment is granted.  The Clerk will enter judgment for the defendants dismissing the plaintiff's claim with an award of costs to the defendants.

DATED: July 23, 2007

BY THE COURT:

s/Richard P. Matsch
_____
Richard P. Matsch, Senior District Judge